## LEWIS vs. DISHER.

TAX DEED.  *Nature of the constructive possession which gives conclusive effect to tax deed.*

1. To acquire title to land under a tax deed by virtue of the land having remained unoccupied for three years next after the recording of the deed, the claimant must show that the land remained unoccupied *continuously* during the whole period. An occupation for *any portion* of that period, by the former owner or any one for him, destroys the conclusive effect of the tax deed.

2. Where land was occupied within the three years next after a tax deed thereof was recorded, by persons who are shown not to have been in under the authority of the grantee in such deed, it must be *presumed,* in the absence of any evidence to the contrary, that such persons occupied as tenants of the former owner, and not as mere trespassers.

3. Whether, if the former owner should take possession so short a time before the three years had elapsed, as to render it impossible for the tax-title claimant to bring an action against him before the end of the three years, this would be treated as a *fraud* upon him, and whether in any case the time limited for the commencement of an action on the tax deed can be extended, is not here determined.

Lewis vs. Disher.

APPEAL from the Circuit Court for *Dodge* County.

Ejectment. The case is stated in the opinion. The defendant appealed from a judgment in favor of the plaintiff.

*Enos & Hall*, for appellant, contended that the evidence showed such acts of possession on the part of the defendant or his grantors, during the three years immediately succeeding the record of the tax deed, as would prevent the running of the statute of limitations in favor of the tax title claimant, citing *Jones v. Collins*, 16 Wis., 594.

*L. T. Fribert*, for respondent, contended that the presumption was that plaintiff had been in the actual or constructive possession of the lands during the three years next succeeding the recording of his tax deeds (*Gunnison v. Hoehne*, 18 Wis., 268), and that there was no evidence in the case to overcome the presumption.

DIXON, C. J. This is an action of ejectment to recover possession of a tract of land in Dodge county, to which the plaintiff claims title in fee simple by virtue of the land having remained vacant and unoccupied for the period of three years next after the recording of certain tax deeds to himself and to others, grantors of his, under whom he also claims. The tax deeds were executed and recorded respectively in the years 1856, 1857 and 1858. The defendant connects himself with the original title from the government of the United States. The controversy in the court below turned upon the point of possession, or whether the land in fact remained unoccupied for the period of three years from the date of the recording of any one of the tax deeds. The trial was by the court without a jury, and the court found that part of the premises were cultivated in the years 1857 and 1858 by persons who seemed to have been trespassers, and who had no authority to use the land or any part of it from the then owner or claimant of it under the original title; and that after the year 1858 the same were lying wild and unoccupied. An examination of the tes-

timony, all of which is said to be reported in the bill of exceptions, but which is very meagre, leads us to a different conclusion. The proof is very clear by the testimony of three witnesses, that the Swan brothers occupied the land — raised a crop of wheat on it — in 1858. The witness William Rice testifies: "I do not know who leased it to them; I think father gave them the right to go on." Who the witness's father was does not distinctly appear, but the inference very clearly is that he was the William H. Rice in whom the original title then was, subject to a mortgage to the state given by him to secure a loan which he had made from the school and university fund. It is true, this is very weak and unsatisfactory evidence, but it is something to weigh against the supposition that the occupants were mere trespassers. There is no pretense that they entered under the claimants by tax deeds. Indeed the contrary is assumed and proved. If they entered by authority at all, therefore, it must have been under the original owner, and, in the absence of all proof upon the subject, the presumption must be that they were licensed and authorized by him — that they entered and occupied as his tenants. There is no presumption in such case, nor in any other, in the absence of proof of the fact, that parties so occupying are trespassers. The presumption is exactly the other way. The presumption of innocence, and that persons are not wrong-doers, always prevails until the contrary is shown. It was incumbent on the plaintiff, therefore, if he would avail himself of the fact, to show that the Swan brothers were trespassers, and not upon the defendant to show that they were not. The presumption is they were not, but were tenants of the former owner of the land.

Besides the actual occupancy thus shown in 1858, it appears that Mr. Rice occupied in 1857, and that in 1859 Mr. Lake went on and repaired the fences by direction of the agents of the then owner by title derived through Rice.

Under these circumstances the question comes up, what benefit or title, if any, the plaintiff can claim or assert by virtue of

the three years' limitation act, as applied in favor of the holder by tax deed where the land has remained unoccupied for that length of time next after the recording of the tax deed. We are of opinion that no absolute title can be set up or asserted merely by virtue of such limitation. In order that the claimant by tax deed may assert or acquire title to unoccupied land in that way, or by lapse of time under the statute, it must appear that the land remained and was continuously unoccupied for the whole period during which the statute was running. Any intervention and actual occupancy during that time by the former owner, or any person for him, disengages the bar of the statute and relieves the former owner from the conclusive effect which would otherwise be given to the tax deed. The constructive possession of unoccupied land which follows the tax deed and vests in the grantee, is, for all the purposes of the statute of limitation and of becoming conclusive evidence of title under it, of the same nature and operates in the same way and with the same force, as an actual adverse possession for the same period of time where a possession of the latter kind is taken and relied upon as a bar under the statute. The constructive possession is in this respect of the same nature, and the force and effect of it is the same, as the twenty years' adverse possession without color of title, or the ten years' with, under the other statutes limiting the time within which actions for the recovery of real estate must be brought. The constructive possession is an adverse possession, and the nature of such a possession, or what it must be, when it is actual, is well understood and defined in the law. It is well settled that an actual adverse possession, to be available as against the true owner and to operate to bar his rights and to transfer the title to the adverse claimant, must have been continous and uninterrupted during the period of limitation prescribed, and that any cessation of such possession, or pause or intermission in it, or any re-entry and actual and peaceable occupation and holding by the true owner before the period of limitation has ex-

pired, will restore such owner to his original right, and defeat the prescription of the adverse claimant, or postpone it so that he can thenceforth only assert or hold by virtue of it from the time his adverse possession is renewed and shall be thereafter continously maintained and held.   This doctrine was examined and fully recognized by this court in *Sydnor v. Palmer*, 29 Wis., 226.  See also *Haag v. Delorme*, 30 Wis., 591. And so strict is the rule that it has been held, if the adverse possession be broken *but for a day*, its effect is entirely destroyed, and, so far as that possession is concerned, it is at an end. And in some cases, the interruptions of simple trespassers, when quite decided and indicative of claim, have been declared to be sufficient to break the continuity and defeat the adverse possession.   Tyler on Ejectment and Adverse Enjoyment, ch. 51, pp. 907, 910 and 911, and authorities cited.   There is no reason why the rules thus established with respect to an actual adverse possession and enjoyment, should not also apply to and govern an adverse possession which is constructive.   We think they do apply and govern, and that the constructive possession of unoccupied land, to be effective as conclusive evidence of title in favor of the grantee in the tax deed, and to bind and conclude the former owner, must be continuous from the date of the recording of the tax deed to the full end and expiration of the three years prescribed by the statute.

. The subject under consideration is well illustrated by some decisions of the supreme court of Illinois under a statute of that state which declares that color of title, possession, and the payment of taxes, for seven successive years, shall bar the remedy of the former owner, and so become conclusive evidence of ownership in the party possessed.   In *Elston v. Kennicott*, 47 Ill., 187, it was held in regard to the payment of taxes required by the statute, that the omission to pay them for any one year would not be excused because .of some technical defect in the assessment for that year, which would have vitiated it if the question had been made.   The omission to pay such

taxes was held to destroy the prescriptive title claimed by the party in possession. In *Wettig v. Bowman*, 47 Ill., 17, it was held that the possession must be continuous for the seven consecutive years, and that a party who allowed the lands to be sold for taxes during the running of the statute, and afterwards redeemed from such sale, would be required to begin *de novo*, and wait the required time. See also *Lindsay v. Fay*, 28 Wis., 177. And in *Schenck v. White*, 53 Ill., 358, where a party claiming land under color of title, payment of taxes and seven years' possession, held undisputed possession from 1858 until 1867, with the exception of the year 1864, during which year the owner of the paramount title held quiet possession by his tenants, but without consent of the tax title claimant, who paid taxes during the whole time, the decision was that the bar of the statute was incomplete, the tax title claimant having acquiesced in an interruption to his possession, making no effort to recover the possession by action at law.

In this case we deem it unnecessary to consider whether there may or may not be possible exceptions to the broad rule above laid down, as, for example, where the former owner takes actual possession on the last day of the three years, or so shortly before the expiration of the time as that it is impossible for the grantee by tax deed to take measures to oust or dispossess him. The rule would seem to admit of no such exception, and the result in that case would appear to be, the bar of the statute not having taken effect in favor of either party, the grantee in the deed or the former owner, that the question of title would be open to litigation between them, and that the grantee in the deed might still prevail if he could show that a valid and sufficient title passed by it. It might be possible that the possession so taken would be regarded as a fraud upon the grantee. See *Encking v. Simmons*, 28 Wis., 281, and authorities there cited. And such would seem to be the situation of the parties wherever neither can take advantage of the three years' bar. But of this question we express no opinion.

Whether the time limited for the commencement of an action to recover *on a tax deed* can in any case be extended beyond the three years, is a question of far too much doubt and difficulty to be considered or solved without the most particular and thorough argument and investigation.

It follows from these views that the judgment must be reversed, and the cause remanded with direction that a *venire de novo* be awarded.

*By the Court.*— It is so ordered.